**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALQUAN MUSLIM,                    :
                                 :
              Petitioner,        :          Civil No. 09-0466 (PGS)
                                 :
         v.                      :
                                 :          **O P I N I O N**
MICHELLE R. RICCI,  et al.,      :
                                 :
              Respondents.       :
                                 :

**APPEARANCES:**

Alquan Muslim, <u>Pro</u> <u>Se</u>
295891/640762B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Lucille M. Rosano, Esq.
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ 07102
Attorney for Respondents

**SHERIDAN, District Judge**

      Petitioner, Alquan Muslim, a prisoner confined at the New

Jersey State Prison in Trenton, New Jersey, submitted a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

respondents are Administrator Michelle Ricci, and the Attorney

General of New Jersey.  Also before this Court is Respondents'

Motion to Amend the Answer (docket entry 44).

For the reasons stated herein, the motion will be dismissed as moot, and the petition must be denied.

**BACKGROUND**

**A.    Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's post-conviction relief ("PCR") proceedings.[1]  See Respondents' Exhibit ("RE") P.

> Defendant was tried to a jury.  At the trial, the State presented evidence that, on the evening of August 25, 1996, Mary Francis and Carol Hutchins were sitting in Rodney Hutchins' car in Newark when Rodney approached them on a bicycle.  Rodney was speaking with the women and defendant approached on foot.  He pulled out a sawed-off shotgun, pointed it at Rodney, and told him to put his hands up.  Rodney told the women to run.  Carol Hutchins got out of the car and began to run.  Mary Francis remained in the car.

> Defendant's brother, co-defendant Patrick Bryant, exited a car, and struck Rodney in the face.  Rodney knocked the gun out of defendant's hands and began to run.  Patrick said, "[g]et that mother fucker, kill that mother fucker."  Defendant chased Rodney and shot him in the back.  Defendant returned to the car, pointed the shotgun at Mary, and began pumping it.  Patrick told defendant to leave her alone and Patrick and defendant drove away.  Rodney died as a result of the gunshot wounds in his back.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

In addition to presenting testimony from eyewitnesses to the shooting, the State presented testimony from Cantrell Wilkes, who stated that on the evening before the shooting, he saw Rodney and defendant talking "face to face" at the Club Safari in Newark.  Wilkes said that Rodney appeared frustrated.

The State additionally presented testimony from Cleveland Barlow, who stated that sometime in the summer of 1996, he saw Patrick with a shotgun that was similar to the gun used in the shooting.  Barlow also said that he saw defendant rob certain drug dealers. Barlow testified that Rodney was a known drug dealer. Barlow further testified that in August 1997, while he and defendant were incarcerated in the Essex County jail, defendant admitted that he shot Rodney because defendant wanted what belonged to him, which Barlow understood to mean money.

See Appellate Division Opinion, RE P.

**B.    Procedural Background**

An Essex County Grand Jury returned an indictment charging Petitioner with murder; conspiracy to commit murder; attempted murder; aggravated assault; possession of a weapon; and possession of a weapon with purpose to use it unlawfully, all in violation of New Jersey state law.

Trial was held in Essex County from October 17 through 27, 1997.  Petitioner was acquitted of first-degree attempted murder, and convicted of the remaining counts.  On November 12, 1997, Petitioner was sentenced to life imprisonment plus 6 ½ years with a 39-year period of parole ineligibility.

Petitioner appealed.  On October 20, 1999, the Appellate Division affirmed the conviction and sentence.  Petitioner filed

a petition for certification with the New Jersey Supreme Court, which was denied on February 8, 2000.

On April 13, 2000, Petitioner filed a motion for post-conviction relief (PCR) in the sentencing court.  The judge held a five-day evidentiary hearing on various dates spanning from August 2, 2002, through April 22, 2003.  After the evidentiary hearing, the judge issued an opinion and order on September 15, 2003, denying the PCR motion in its entirety.  The Appellate Division affirmed the denial on January 24, 2006.  Petitioner's petition for certification to the New Jersey Supreme Court was denied on April 4, 2006.

On May 1, 2006, Petitioner filed a second PCR motion. Following oral argument, the judge denied Petitioner's PCR motion by written opinion dated March 16, 2007.

On March 9, 2007, Petitioner filed a petition for a writ of habeas corpus in this Court.  On May 21, 2007, Petitioner asked that his petition be stayed and held in abeyance.

Meanwhile, on October 9, 2008, the Appellate Division affirmed the order denying Petitioner's second PCR motion, ruling it was time barred.  Petitioner's petition for certification was denied on February 4, 2009.

On October 10, 2008 (one day after the Appellate Division affirmed the denial of Petitioner's second PCR motion), Judge Greenaway, formerly of this Court and currently a Circuit Judge

4

in the Court of Appeals for the Third Circuit, entered an order dismissing Petitioner's application for a writ of habeas corpus, without prejudice, finding the petition was a "mixed petition" which was dismissible for failure to exhaust state court remedies.

Petitioner filed this, his second habeas petition, on January 30, 2009, and an amended petition on February 23, 2009. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Respondents filed an Answer to the petition and the available state court record on or about March 22, 2010. On January 3, 2011, Petitioner filed a brief in further support of his habeas petition.

On January 7, 2011, Respondents filed a motion to amend/correct their Answer, noting that they did not assert the affirmative defense of statute of limitations violations. Petitioner opposed the motion with a certification filed on January 21, 2011. Finally, on February 2, 2011, Petitioner provided missing pages of his habeas petition, asserting all grounds for relief.

C.   **Petitioner's Claims**

Petitioner cites twenty grounds for relief in his habeas petition:

1.  The trial court erred by refusing to excuse a juror for cause because she was a corrections officer at the county jail.

2.  Petitioner's right to a fair trial was violated when the trial court allowed Cleveland Barlow to testify about other crimes evidence.

3.  The State's misconduct deprived Petitioner of a fair trial.

4.  Petitioner's motion for a mistrial should have been granted because of a state witness' disruptive behavior.

5.  The trial court failed to instruct the jurors that before they could consider Petitioner's alleged out-of-court oral statements to Cleveland Barlow, they must first find such statements to be credible.

6.  The trial judge erred in admitting hearsay evidence under the "present sense impression" exception to the hearsay rule.

7.  Petitioner should have been allowed to introduce the sworn police statement of Limonique Scott, an eyewitness.

8.  The trial judge improperly denied the request for a *Clawans* charge.

9.  The trial judge should have recused himself.

10. The State's knowing use of perjured testimony constitutes a *Brady* violation and prosecutorial misconduct.

11. The trial judge shifted the burden of proof to Petitioner with the renunciation as to attempted murder charge, and placed Petitioner at the crime scene when Petitioner repeatedly expressed his complete innocence.

12. The trial judge commented on Petitioner's reluctance to testify during the charge, violating Petitioner's right to a fair trial.

13. Petitioner was denied effective assistance of counsel.

14. Petitioner was denied effective assistance of appellate counsel.

15. The jury instruction on identification was insufficient and unbalanced in favor of the State.

16. The trial court erred by charging conspiracy to murder.

17. The prosecutor withheld exculpatory evidence from the grand jury.

18. The State suppressed criminal case histories of State witnesses and secret deals.

19. Petitioner received newly discovered evidence that Barlow lied about Petitioner's confession.

20. Petitioner's sentence, imposing an extended term, was unconstitutional.

(Petition, ¶ 12).

Petitioner also cites an additional 11 grounds for relief in his amended petition for habeas relief (docket entry 2), including:

1.  Petitioner's right to a fair trial was violated when Barlow was allowed to testify about other crimes.

2.  Petitioner has obtained evidence that Barlow presented false testimony when he testified that Petitioner confessed to him in jail.

3.  Ineffective assistance of counsel- failed to argue prosecutorial misconduct because state did not present exculpatory evidence to grand jury.

4.  Ineffective assistance of counsel- failed to raise that Appellate Division rule that trial judge erred in charging conspiracy to murder in co-defendant's case.

5.  Ineffective assistance of counsel- failed to argue that the state suppressed criminal case histories of state witnesses and secret plea deals.

6.  Ineffective assistance of counsel- failed to argue that trial court failed to instruct on lesser included offenses.

7.  Ineffective assistance of counsel- failed to argue that trial judge's charge reduced state's burden of proof.

8.  Ineffective assistance of PCR counsel.

9.  Ineffective assistance of PCR counsel when PCR counsel failed to present newly-discovered evidence.

8

10.  Ineffective assistance of PCR counsel when PCR counsel did

not raise arguments from Petitioner's pro se briefs.

11.  [Not applicable].

(Docket entry 2-1).

## 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims

10

presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404

U.S. 519, 520 (1972).  A pro se habeas petition and any
supporting submissions must be construed liberally and with a
measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d
Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d
Cir. 1989); United States v. Brierlev, 414 F.2d 552, 555 (3d Cir.
1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

### A.   Claim Regarding Juror (Ground 1)

In Ground 1, Petitioner argues that the trial judge should
have excused a juror, Helen Moore, from the jury because she was
a corrections officer at the Essex County Jail and presumably
familiar with jail procedures, and would be able to independently
verify Barlow's ability to have contact with Petitioner and his
brother, co-defendant Patrick Bryant, at the Jail.

Petitioner raised this argument in his direct appeal.  The
Appellate Division noted that by the time Ms. Moore told the
judge that she knew one of the witnesses because they worked
together at the jail, defense counsel had utilized all his
peremptory challenges.  Ms. Moore explained that she could be
impartial, and the judge refused to excuse her for cause.  In
examining this claim, the Appellate Division held first that a
judge's exercise of discretion concerning prospective jurors
would not ordinarily be disturbed on appeal.  Then, the Appellate
Division noted:

12

To establish a violation of the Sixth Amendment right to an impartial jury, "a defendant must demonstrate that one of the jurors who actually sat on the jury was partial."  To remove a juror for cause, "the challenging party must demonstrate that the juror's views would prevent or substantially impair the performance of that juror's duties in accordance with the court's instructions and the juror's oath."

The <u>voir</u> <u>dire</u> conducted by the trial judge must be sufficient to disclose any hidden bias.  When the juror's occupation raises the question of partiality, the trial judge must inquire whether the juror can be impartial.  But "the presence of a member of the law-enforcement community on a jury [does not] constitute grounds for reversal," especially when that juror indicates she can be fair and impartial.  "Although a juror's professions of impartiality will not always insulate him from excusal for cause, they will be accorded a great deal of weight."

Here, the record does not reflect that Moore was dissembling when she indicated she was not connected with the case and could be fair and impartial.  Moore recognized the name of the potential witness (Investigator Barcliff) and knew where he worked.  They did not work or socialize together.  Investigator Barcliff did testify but his testimony was limited to a recitation of information contained in records maintained at the county jail.  These documents recorded dates of incarceration and cell assignments.  Unlike an eyewitness to a crime, Barcliff's knowledge of the actors and his ability to observe and fairly report events was not tested.  Moreover, defendant has also not demonstrated that this juror's knowledge of jail procedures could influence how she would view the credibility of certain witnesses.

RE C, at pp. 6-8 (internal citations omitted).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. Amend. VI.  The right to an impartial jury is

applicable to the States through the Fourteenth Amendment.  <u>See</u>
<u>Morgan v. Illinois</u>, 504 U.S. 719, 726 (1992); <u>Duncan v.</u>
<u>Louisiana</u>, 391 U .S. 145 (1968).

Thus, the Constitution requires an impartial jury, but it
does not dictate a "catechism" for jury <u>voir</u> <u>dire</u>.  <u>See</u> <u>Morgan</u>,
504 U.S. at 729.  Absent racial or ethnic bias, or capital
punishment issues, the Supreme Court has held that trial courts
have substantial discretion in determining the need for specific
questions during jury <u>voir</u> <u>dire</u>.  <u>See</u> <u>Rosales-Lopez v. United</u>
<u>States</u>, 451 U.S. 182, 190 (1981); <u>Ristaino v. Ross</u>, 424 U.S. 589,
595 (1976)(the Supreme Court acknowledged that constitutional
requirements exist as to questioning prospective jurors about
racial or ethnic bias).  Consequently, under federal law, the
trial courts have considerable discretion in conducting <u>voir</u>
<u>dire</u>; however, trial courts must make inquiries relevant to
disclose actual bias and satisfy the demands of fairness.  <u>See</u>
<u>Butler v. City of Camden</u>, 352 F.3d 811, 819 (3d Cir. 2003)(citing
<u>United States v. Dansker</u>, 537 F.2d 40, 56 (3d Cir. 1976), <u>cert.</u>
<u>denied</u>, 429 U.S. 1038 (1977)).  Trial judges are afforded
discretion in conducting <u>voir</u> <u>dire</u> because the "determination of
impartiality, in which demeanor plays such an important part, is
particularly within the province of the trial judge."  <u>Ristaino</u>,
424 U.S. at 594 (citation omitted).  A trial judge's factual
findings during jury <u>voir</u> <u>dire</u> are entitled to a presumption of

correctness on habeas review.   See <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 (1985).

In this case, Petitioner submits no evidence that his jury was impartial or unfair, or that Ms. Moore was biased.  A review of the record indicates that the trial court conducted an extensive <u>voir</u> <u>dire</u> of Ms. Moore.  Ms. Moore stated that she knew the witness only slightly and did not work or socialize with him. She was not connected with the case, and did not recognize Barlow's name.  Moreover, at the end of the trial, the judge charged the jury on the presumption of innocence and reasonable doubt. (Jury Charge, Transcript of October 24, 1997 at pp. 117-120, attached to Respondents' Response as p. 96).

Therefore, this Court concludes, based on the record and Petitioner's lack of evidence as to jury bias, that Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court and the Appellate Division "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

15

**B.   Claims Regarding Trial Court Rulings (Grounds 2, 4, 6-8)**

Petitioner asserts that the trial court violated his rights when certain evidentiary rulings were made during the course of his trial, including: allowing Barlow to testify about other crimes evidence (Ground 2); denying Petitioner's motion for mistrial (Ground 4); admitting hearsay evidence under an exception (Ground 6); denying Petitioner's request to introduce a police statement of a witness (Ground 7); and improperly denying a *Clawans* charge (Ground 8).

These arguments were presented to the state court on direct appeal.  Besides Ground 2 concerning other crimes evidence, the Appellate Division dismissed the claims as without merit, adding:

> Judge Fullilove properly admitted the victim's statement to Cantrell Wilkes the day before the shooting according to the "present sense impression" exception to the hearsay rule.  N.J.R.E. 803(c)(1). Limonique Scott's statement to the police was properly excluded because the statement did not satisfy the requirements of N.J.R.E. 804(b)(1).  Further, the trial judge properly declined defendant's request for a Clawans [38 N.J. 162 (1962)] charge concerning the absence of Scott as a witness.

> In addition, we perceive no misconduct by the prosecutor and no disruptive or prejudicial behavior by any State witness.

> *  *  *

> . . . the trial judge provided a prompt and appropriate instruction when Ms. Francis [the alleged disruptive witness] stated her opinion concerning defendant's guilt.  We are satisfied that the outburst was neither solicited nor expected by the State and was the product of frustration and impatience by a witness unfamiliar

16

with the time and detail required to present her testimony.

RE C at p. 13.  However, with regard to Petitioner's challenge to the admission of the other crimes testimony by Barlow, the Appellate Division provided a thorough analysis, finding:

> The State presented Cleveland Barlow as a witness to establish a motive for the killing and to relate an inculpatory statement.  Judge Fullilove conducted a hearing outside the presence of the jury to determine the admissibility of Barlow's testimony.  He determined that Barlow would be able to testify that during the summer he had seen defendant's brother and co-defendant with a shotgun similar to the one used to kill the victim.  Barlow would also be allowed to testify that defendant and his brother were drug dealers who were known to rob other drug dealers.  The trial judge noted that appropriate limiting instructions would be required but the testimony concerning the shotgun was relevant to the issue of opportunity and the other testimony was relevant to defendant's motive.  Notably, the trial judge barred admission of a letter from Barlow to a detective which related the same information; the trial judge considered this attempt to corroborate Barlow's testimony too prejudicial.

> Evidence of other crimes is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident when those matters are relevant to a material issue in dispute.  Such evidence is not admissible to prove the disposition of a person to commit a crime.

> The admission of other crimes evidence is within the discretion of the trial judge.  We will disturb that decision only if there has been an abuse of discretion or a clear error of judgment.  However, this discretion is no unbounded.  To balance the State's interest in presenting this evidence against the possibility of unfair prejudice to the defendant, the Court has set forth rules applicable to the situation.  In State v. Cofield, the Court stated that "the evidence must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair

17

prejudice to the defendant, and must be coupled with a limiting instruction."

Applying this analysis to Barlow's testimony, we conclude that the trial judge properly exercised the discretion reposed in him.  The testimony reveals that the shotgun used by defendant to shoot the victim had a distinctive handle.  Significantly, Barlow saw defendant's brother in possession of a similar, distinctively designed weapon a short time prior to the shooting.  The testimony was relevant to the issues of opportunity and identity.

The testimony concerning the involvement of defendant and his brother in the distribution of drugs and their history of robbing other drug dealers was relevant to the reason for their confrontation with the victim.  Although the State was not required to establish the motive for the shooting, the State was not precluded from presenting an explanation for what otherwise appears to be a senseless act.

Finally, the trial judge provided an instruction which specifically limited the jury's use of this evidence.  It would have been better practice for the limiting instruction to have been given as soon as the other crimes evidence was uttered by Barlow.  However, the instruction was given during the course of his testimony and it did properly limit the jury's consideration of this evidence.

RE C at pp. 9-11 (internal citations omitted).

Federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) (citing Estelle).  Inquiry as to whether this evidence was correctly admitted under New Jersey law plays "no part [in] a federal court's habeas review of a state conviction."  Estelle, 502 U.S. at 67.  Because it is "not the province of a federal habeas court to reexamine state-court

18

determinations on state-law questions," this court's inquiry is "limited to deciding whether [petitioner's] conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Wells v. Pestock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights.  We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

Applying these principles to the facts of the instant case, a review of the New Jersey Appellate Division's decision shows that the state courts found no error had been committed in the evidentiary rulings at issue under state law.  Given this determination, a federal habeas court may only consider whether the admitted evidence was so prejudicial as to violate due process and the right to a fair trial.  See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (generalized arguments of denial of due process as opposed to specific guarantees under the Bill of Rights were advanced; relief can be granted only if the trial is so infected with unfairness as to make the conviction a denial of due process); Windham v. Markle, 163 F.3d 1092, 1103 (9th Cir. 1998).  Petitioner must show that there are no

permissible inferences that the jury could have drawn from the admission of the evidence.  See Jamal v. Van DeKamp, 926 F.2d 918, 920 (9th Cir. 1991).  The evidence must "be of such quality as necessarily to prevent a fair trial." Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986), cert. denied, 479 U.S. 1068 (1987).

As Petitioner has failed to make the necessary showing, as review of the record fails to support his claims, and as this Court does not sit to review state law evidentiary decisions in a habeas corpus action, the Court will deny relief on these claims.

C.    **Claims Regarding Prosecutorial Misconduct (Counts 3, 10, 17, 18)**

Petitioner argues in Ground 3 that the prosecutor committed misconduct in summation when he personally vouched for Investigator DeFrancisci, when he denigrated the defense's summation, and when he compared Francis' shock upon witnessing the shooting to the Oklahoma City bombing.  In Ground 10, Petitioner argues that the State knowingly presented perjured testimony when it allowed Francis and Barlow to testify, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  In Ground 17, Petitioner claims that the prosecutor withheld exculpatory evidence from the Grand Jury, and in Ground 18, Petitioner argues that the State suppressed criminal histories that had been requested.

20

The Appellate Division examined Petitioner's claim regarding improper summation in Petitioner's direct appeal and the claim regarding perjured testimony in Petitioner's first PCR petition. The Appellate Division found both claims without merit to warrant discussion.  See RE C at pp. 12-13; RE K at p. 13.  As to Petitioner's claim regarding exculpatory evidence, the PCR judge found that the evidence that Petitioner sought to have before the Grand Jury, namely, the testimony of Limonique Scott or Lorenzo Biera, was not clearly exculpatory, and their testimony was contradicted by other witnesses to the crime.  RE N at p. 117).

The Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor-
> indeed, he should do so.  But, while he may strike hard
> blows, he is not at liberty to strike foul ones.  It is
> as much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just
> one.... Consequently, improper suggestions,
> insinuations, and, especially, assertions of personal
> knowledge are apt to carry much weight against the
> accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 884 (1935), overruled on

other grounds, Stirone v. United States, 361 U.S. 212 (1960).

> The line separating acceptable from improper
> advocacy is not easily drawn; there is often a gray
> zone.  Prosecutors sometime breach their duty to
> refrain from overzealous conduct by commenting on the
> defendant's guilt and offering unsolicited personal
> views on the evidence.... The prosecutor's vouching for
> the credibility of witnesses and expressing his

> personal opinion concerning the guilt of the accused
> pose two dangers: such comments can convey the
> impression that evidence not presented to the jury, but
> known to the prosecutor, supports the charges against
> the defendant and can thus jeopardize the defendant's
> right to be tried solely on the basis of the evidence
> presented to the jury; and the prosecutor's opinion
> carries with it the imprimatur of the Government and
> may induce the jury to trust the Government's judgment
> rather than its own view of the evidence.

United States v. Young, 470 U.S. 1, 7 and 18 (1985).

Under Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, as noted by Respondents in the answer, the prosecutor's summation did not constitute misconduct. First, with regard to vouching for Investigator DeFrancisci, the record does not give merit to this claim. The comment, made in direct response to a comment by defense counsel, was that the investigator "obviously had an interest [in the case], a point of

view as to what happened here because he made the determination when he signed the complaints." The comment was addressed to the evidence presented at trial; not the prosecutor's personal belief or opinion. Second, concerning the claim that the prosecutor denigrated the defense during summation, a review of the record reveals that the prosecutor demonstrated the "holes" in the defense, to rule out the defense's suggestion of a conspiracy of State witnesses. Finally, with regard to the comment that Francis' shock was comparable to the Oklahoma City bombing, defense counsel did not object to the comment, the state court found no error with it, and this Court finds that it was not so severe as to render the trial unfair. This Court further notes that during the charge to the jury, the trial court charged that counsel's arguments were not evidence. (Transcript of Jury Charge, at pp. 115-116, attached to Respondents' Response at p. 95).

As set forth above, Petitioner has not set forth valid claims demonstrating that he is entitled to habeas relief, as he has not shown, and the record does not reflect, that the summation was so inappropriate that it infected the trial with unfairness. The evidence against Petitioner was overwhelming, including testimony from Carol Hutchins, the investigation and statements of Carol Hutchins and Francis, testimony from a witness who overheard a confrontation between Petitioner and

Hutchins about what Petitioner was "going to do out here,"
Barlow's testimony concerning his knowledge of Petitioner robbing
drug dealers, and the testimony that Petitioner admitted to
Barlow that he killed Hutchins.

With regard to the alleged <u>Brady</u> violation, Petitioner
alleges that the testimony of Francis and Barlow violated <u>Brady</u>
because they lied.  He states: "In fact, all State witnesses
lied."

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme
Court held that "the suppression by the prosecution of evidence
favorable to an accused upon request violates due process where
the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution."
<u>See</u> <u>also</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972) ("A
finding of materiality of the evidence is required under
<u>Brady</u>."); <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985) (in
which the Supreme Court held that, regardless of request,
favorable evidence is material, and constitutional error results
from its suppression by the government, "if there is a reasonable
probability that, had the evidence been disclosed to the defense,
the result of the proceeding would have been different").  For
<u>Brady</u> purposes, there is no distinction between exculpatory and
impeachment evidence.  <u>See Kyles v. Whitley</u>, 514 U.S. 419, 433
(1995) (citations omitted).

24

Petitioner has not set forth any evidence to demonstrate a
Brady violation, and habeas relief is not warranted.

Furthermore, concerning Petitioner's claim regarding Grand
Jury evidence, the Fifth Amendment right to an indictment by a
Grand Jury does not apply to state criminal prosecutions.  See
Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000); Albright v.
Oliver, 510 U.S. 266, 272 (1994); Hurtado v. California, 110 U.S.
516 (1884).  Because the Due Process Clause of the Fourteenth
Amendment has not been construed to incorporate the Fifth
Amendment right to indictment by a Grand Jury, id., the legality
of an indictment is a matter of state law, see U.S. Wojtycha v.
Hopkins, 517 F.2d 420, 425 (3rd Cir. 1975).[2]  Accordingly, "there
is no federal constitutional impediment to dispensing entirely
with the grand jury in state prosecutions."  Beck v. Washington,
369 U.S. 541, 545 (1962); see also Gerstein v. Pugh, 420 U.S.
103, 118-119 (1975) ("the accused is not 'entitled to [federal]
judicial oversight or review of the decision to prosecute").
Without offending the Constitution, state prosecutions may be

---

[2]  Moreover, under New Jersey law, prosecutors are not
generally required to provide the grand jury with evidence on
behalf of the suspect, see State v. Hogan, 144 N.J. 216, 235
(1996), and an indictment should be disturbed only on the
clearest and plainest ground.  See State v. Womack, 145 N.J. 576,
588 (1996).  Such a duty is triggered "only in the rare case in
which the prosecutor is informed of evidence that both directly
negates the guilt of the accused and is clearly exculpatory."
Hogan, 144 N.J. at 237.

"instituted on informations filed by the prosecutor, on many occasions without even a prior judicial determination of 'probable cause'-a procedure which has likewise had approval [of the Supreme Court] in such cases as Ocampo v. United States, 234 U.S. 91 (1914), and Lem Woon v. Oregon, 229 U.S. 586 (1913)." Beck v. Washington, 369 U.S. at 545; accord Rose v. Mitchell, 443 U.S. 545, 576 (1979) ("There is no constitutional requirement that a state criminal prosecution even be initiated by a grand jury"). Because Ground 17 does not assert cognizable federal claims, Petitioner is not entitled to habeas relief on this ground.

As to the claim in Ground 18 that the State did not provide adequate criminal histories, the PCR judge found: "The Court is well satisfied that the Trial Counsel asked and received adequate criminal histories for the witnesses and cross-examined them sufficiently." RE N at p. 6. This Court will not disturb that ruling. Petitioner's claims that the State withheld any criminal histories is without merit and does not rise to the level of a constitutional violation. As noted, the trial was not so unfair as to render it unconstitutional.

Therefore, Petitioner's claims regarding prosecutorial misconduct will be denied.

26

D.    **Claims Regarding Jury Instructions (Grounds 5, 11, 15, 16)**

In Ground 5, Petitioner asserts that the trial court failed to instruct jurors that before they could consider the Petitioner's out-of-court statements to State witness Barlow, they must first find that such statements were credible beyond a reasonable doubt.  In Ground 11, Petitioner argues that the trial court erred in giving a renunciation charge as to attempted murder and the erroneous charge violated his right to a fair trial.  Petitioner also contends in Grounds 15 and 16 that the trial court erred with an insufficient identification charge, and by charging conspiracy to murder.

The Appellate Division reviewed the claim concerning Barlow's statement on direct appeal.  Citing state law, the Appellate Division noted that once a confession is found voluntarily given, the trial judge must instruct the jury that it must decide the credibility of the confession.  Further, the jury must be instructed that it should receive and weigh with caution any oral statements in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal statements.  RE C at pp. 11-12, citing State v. Hampton, 61 N.J. 250, 271-72 (1972), codified at N.J.R.E. 104(c), and State v. Kociolek, 23 N.J. 400, 421 (1957).  However, the Appellate Division continued to hold:

> Here, we are satisfied that the omission of these cautionary instructions does not constitute plain

27

> error.  There was substantial additional evidence of
> defendant's guilt, including the testimony of two
> eyewitnesses.  Barlow's testimony merely corroborated
> substantial other evidence of guilt; therefore,
> omission of the <u>Hampton</u> and <u>Kociolek</u> charges was not
> capable of producing an unjust result.

RE C at pp. 11-12 (internal citation omitted).

Regarding the renunciation charge, the Appellate Division examined this argument on appeal of Petitioner's denial of his first PCR motion, and found it without merit to warrant discussion.  <u>See</u> RE K at p. 13.  This Court notes that Petitioner was found not guilty of the attempted murder charge.  However, it appears that under state law, the charge was proper, as the renunciation defense should be charged along with criminal attempt when the evidence suggests that Petitioner abandoned his efforts to commit the crime.  <u>See</u> <u>N.J.S.A.</u> 2C:5-1d; <u>State v. Alston</u>, 311 N.J. Super. 113, 121 (App. Div. 1998); <u>N.J. Model Criminal Jury Charge</u>, Attempted Murder, 2C:5-1 and 2C:11-3 (Approved 12/7/92).

The claims regarding the identification charge and the conspiracy charge were examined in the state courts and found to be without merit.  RE K at p. 13.

For purposes of this habeas petition, this Court notes that generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding:

> ... the only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73, (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997); see also

In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

    In this case, this Court has reviewed the record, and notes

that there is no contention that the jury charge wrongly

described the burden of proof.  The state courts did not find any

error under state law with the charges, and this Court cannot
ascertain any error that would rise to the level of a
constitutional deprivation.

Further, a review of the record reveals that Petitioner has
not demonstrated that his entire trial and conviction was so
prejudiced by the charge as to violate the principles of
fundamental fairness and due process.  There was ample evidence
against Petitioner to justify his conviction.  Petitioner's
conviction was based on a credibility determination by the jury,
who chose to believe the State's witnesses over Petitioner's
defense.  Petitioner's conviction was neither fundamentally
unfair, nor violated due process.  Therefore, these grounds for
relief will be denied.

**E.   Claim Regarding Trial Judge Failure to Recuse (Ground 9)**

In Ground 9, Petitioner argues that because the trial judge,
while in private practice, represented Petitioner's brother in a
criminal matter in Essex County, he should have recused himself
from the trial.  The Appellate Division examined this argument in
the appeal of Petitioner's PCR motion, finding "no factual or
legal basis to require recusal of Judge Fullilove as either the
trial judge or the judge assigned to review [petitioner's]
petition for post-conviction relief."  RE K, at p. 11.

According to federal law,

> For a motion to recuse to be granted, the
> [petitioner] must allege bias or prejudice from a

30

> source other than the Court proceedings in this
> case.... The facts ... must show the bias is personal,
> as opposed to judicial, in nature.... An allegation of
> "judicial" bias is not grounds for a motion to recuse.

United States v. Falcone, 505 F.2d 478, 485 (3d Cir. 1974), cert.
denied sub. nom. Berger v. United States, 420 U.S. 955 (1975).
See also United States v. Rosenberg, 806 F.2d 1169, 1171 (3d Cir.
1986), cert. denied, 481 U.S. 1070 (1987).

The record reveals that the trial judge did not harbor any bias or personal prejudice against Petitioner.  This Court finds no reason to disturb the findings of the state court concerning this issue, and this habeas claim will be denied.

## F.   Claim Regarding Comments by Trial Judge (Ground 12)

Petitioner claims in Ground 12 that the trial court improperly commented on the Petitioner's reluctance to testify in its final jury instruction, and that the comment nullified the instruction regarding Petitioner's election not to testify.  He argues that the following charge was inappropriate:

> In considering the testimony and in evaluating it
> and in considering the credibility of the witness, you
> may take into account the interest of lack of interest
> of any witness in the outcome of the trial; his or her
> bias or prejudice, if any, his or her mental capacity
> was given, any prior inconsistent statement; any
> discrepancies or inconsistencies in his or her
> testimony; the demeanor of the witness on the stand;
> his or her candor or evasiveness; if either appears;
> his or her willingness or reluctance to answer; and the
> inherent believability or lack thereof of the
> testimony.

(Transcript of Jury Charge at p. 119, attached to Respondents' Response at p. 96).  Petitioner raised this issue before the New Jersey courts on appeal of his PCR motion, and the Appellate Division found it without merit to warrant discussion (RE K at p. 13).

As noted, with regard to jury charges, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997).  This Court does not see how the above-referenced charge in any way lifted the burden of proof to the Petitioner.  Further, the trial court gave a sufficient instruction on Petitioner's decision to not testify, immediately after the above-referenced charge, noting that Petitioner was entitled to the presumption of innocence even though he did not testify.  (Transcript of Jury Charge, at p. 119, attached to Respondents' Response at p. 96).

Petitioner has not demonstrated that he is entitled to habeas relief on this claim.

## G.   <u>Newly Discovered Evidence Claim (Ground 19)</u>

In Ground 19, Petitioner asserts that a sign-in sheet for religious services evidences that Barlow lied about Petitioner's confession to him at the jail.  In Petitioner's second PCR motion, the PCR judge examined this assertion in an ineffective

assistance of counsel claim, finding: "The Petitioner claims that this evidence [the sign-in sheet] contradicts Barlow's testimony that Petitioner confessed to him at religious services. ...  If presented the evidence would have only a minimal effect on the credibility of a witness Barlow and would not clearly exculpate the Petitioner.  Furthermore, the evidence is not newly discovered because it could have been reasonably discoverable before trial and would not be the kind that it would change the jury's verdict."  RE N at p. 5 (citation omitted).

For the reasons set forth above concerning evidentiary decisions at trial, Section B, this Court finds that Petitioner's claim in Ground 19 does not rise to the level of a constitutional violation and does not warrant habeas relief.  The admission of evidence is, generally, a state court matter.  As the state courts have reviewed Petitioner's claim concerning this evidence and denied it, and because a review of the record reveals that Petitioner's trial was not fundamentally unfair, this Court finds no reason to upset those rulings.

**H.    Sentencing Claim (Ground 20)**

In Ground 20, Petitioner argues that his extended term sentence violated his right to trial by jury and due process of the law under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004).

33

The Appellate Division examined Petitioner's sentence and found that Petitioner was "extended term eligible" and that "[a]n extended term imposed on the basis of the prior criminal record of defendant does not violate the Apprendi/Blakely rules."  RE K at p. 13 (citation omitted).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  For example, in Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected Petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts.  Petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary.  The Supreme Court held:

> We are not at liberty to conjecture that the trial
> court acted under an interpretation of the state law
> different from that which we might adopt and then set
> up our own interpretation as a basis for declaring that
> due process has been denied. We cannot treat a mere
> error of state law, if one occurred, as a denial of due

34

process; otherwise, every erroneous decision by a state
court on state law would come here as a federal
constitutional question.

Id. at 731.

Here, Petitioner was sentenced in accordance with state law,
with his sentence reviewed by the Appellate Division, twice: once
on direct appeal and once on appeal of his first PCR denial.  RE
C, RE K.  Petitioner has not provided this Court with any
justification to grant habeas relief and upset the state court
proceedings.

**I.   <u>Ineffective Assistance of Counsel (Grounds 13, 14) and
       Claims Raised in Petitioner's Amended Petition (Grounds 1-
       11)</u>**

Petitioner's first two grounds listed in his amended habeas
petition were raised in his original petition.  Ground 1, that
Petitioner's rights to a fair trial were violated when Barlow was
allowed to testify, was discussed in Ground 2 of the original
petition, <u>infra</u>.  Ground 2 of the amended petition, that Barlow's
testimony was perjured, was raised in Petitioner's prosecutorial
misconduct claim in Ground 10 of the original petition, discussed
<u>infra</u>.  Neither of these claims has merit.[3]

Furthermore, skipping around a bit, this Court notes that
Petitioner's claims of ineffective assistance of PCR counsel,

---

[3]  This Court also notes that Petitioner's Ground 11 in his
amended habeas petition basically asks this Court to consider the
claims in his amended petition, and does not challenge his
conviction.

Grounds 8-10 of the amended habeas petition, must be denied, pursuant to 28 U.S.C. § 2254(i)("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Therefore, in Petitioner's original petition, he asserts ineffective assistance of trial and appellate counsel (Grounds 13 and 14), and the remaining grounds in the amended habeas petition, Grounds 3-7, concern ineffective assistance of trial counsel.

    1.   Petitioner's Claims

Petitioner's ineffective assistance of trial counsel claims mimic his claims in his original habeas petition.  In Grounds 13 and 14 of his original petition, Petitioner asserts that counsel failed to investigate and interview witnesses, failed to investigate State witnesses, and failed to put on a successful defense, and that appellate counsel failed to raise obvious issues.  In his amended petition, Petitioner argues that counsel was ineffective for failing to raise numerous issues to the trial court, including: prosecutorial misconduct; that the trial judge erred in charging conspiracy to murder as decided in co-defendant's appeal; that the State suppressed criminal histories of witnesses and plea deals; that the trial court should have

charged lesser-included offenses; and that the charge reduced the
State's burden of proof.

    2.   Applicable Supreme Court Precedent

    The Sixth Amendment, applicable to states through the Due
Process Clause of the Fourteenth Amendment, guarantees the
accused the "right ... to have the Assistance of Counsel for his
defense." U.S. Const. amend. VI.  The right to counsel is the
right to the effective assistance of counsel, and counsel can
deprive a defendant of the right by failing to render adequate
legal assistance.  See Strickland v. Washington, 466 U.S. 668,
686 (1984).

    A claim that counsel's assistance was so defective as to
require reversal of a conviction has two components, both of
which must be satisfied.  See Strickland, 466 U.S. at 687.
First, the defendant must "show that counsel's representation
fell below an objective standard of reasonableness." Id. at
687-88.  To meet this prong, a "convicted defendant making a
claim of ineffective assistance must identify the acts or
omissions of counsel that are alleged not to have been the result
of reasonable professional judgment." Id. at 690.  The court
must then determine whether, in light of all the circumstances at
the time, the identified errors were so serious that they were
outside the wide range of professionally competent assistance.
See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

With regard to appellate counsel, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S.

387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.   See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

3.   State Court Review of Petitioner's Claims

Petitioner's grounds regarding ineffective assistance of counsel were presented to the state courts in his first and second PCR motions.  The PCR judge, who was also the trial judge,

39

cited _Strickland_ throughout his opinions, and examined Petitioner's trial and appellate counsel claims in turn.

After Petitioner filed his first PCR motion, an evidentiary hearing took place from August 2, 2002, until April 22, 2003, with testimony from defense counsel.  In the first PCR denial opinion, the PCR judge examined the evidence attained from defense counsel's testimony at the evidentiary hearing that was conducted.  The PCR judge found that:

> . . . the decisions made by trial counsel do [in] fact fall into this category of strategic choices and do not rise to the level of ineffective assistance of counsel. This court is also satisfied that even if the various witnesses had been located and/or called to testify, defendant has failed to satisfy this court that the second prong of _Strickland_ has been satisfied.  Given the ability of this court to weigh the credibility of the proposed witnesses and recalling the testimony presented at the original trial, I cannot conclude that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  _Strickland_, 466 U.S. at 694.

RE F, Opinion attached to Petitioner's brief.

The Appellate Division also examined Petitioner's first PCR counsel claims, cited _Strickland_, and found:

> After careful scrutiny of the record in its entirety, we are satisfied that the post-conviction relief judge's findings of fact are well-supported by the record.  Having found that trial counsel had conducted an investigation, had attempted to locate witnesses and had decided not to call witnesses because the negative testimony outweighed the value of any positive testimony, the post-conviction relief judge properly found that defendant did not establish the first prong of the _Strickland_/_Fritz_ test.

40

RE K at p. 11 (internal citations omitted).

Although Petitioner's claims presented in the second PCR motion were found to be procedurally barred under New Jersey law, the PCR judge considered the merits of the claims nonetheless. In the second PCR denial opinion, the PCR judge found that counsel was not ineffective in failing to argue that the State should have presented exculpatory witnesses to the Grand Jury, as "Petitioner's bare assertion that had the testimony been presented to the grand jury it would have exculpated him is insufficient to satisfy the second prong of Strickland."  (RE N at p. 117).  He also found that the charge was proper, and "therefore, the Petitioner failed to provide sufficient evidence that the first prong in Strickland was violated."  (RE N at p. 118).  Furthermore, the PCR judge found that trial counsel "asked and received adequate criminal histories for the witnesses and cross-examined them sufficiently."  (RE N at p. 119).  Finally, the PCR judge found that Petitioner's "bare allegations" were insufficient to establish ineffective assistance of counsel.  (RE N at p. 119).

After the denial, Petitioner appealed, and the denial was affirmed by the Appellate Division.  The Appellate Division held:

> Judge Fullilove also applied the test under Strickland v. Washington, to defendant's claims of ineffective assistance of counsel.  The record supports the judge's determination that defendant failed to show that trial, appellate, PCR or PCR appellate counsel

were in any way ineffective in their representation of
defendant.

RE P (<u>State v. Bryant</u>, 2008 WL 4630595 (N.J. App. Div. Oct. 9,
2008)(unpubl.)).

    4.  <u>Analysis</u>

    Petitioner's claims that counsel did not properly represent
him are without merit.  As the state courts found, citing
<u>Strickland</u>, a review of the record shows that counsel was
competent and did not perform deficiently.  The decisions made by
counsel as to how to handle various witnesses and evidence were
matters of counsel's strategy.

    Further, the evidence against Petitioner at trial was
substantial, and Petitioner cannot show prejudice.  As noted,
evidence against Petitioner included testimony of several
eyewitnesses.  The testimony of Barlow, that Petitioner confessed
the murder to him, was also substantial.  All witnesses were
subject to cross-examination, and all evidence was weighed by the
jury for a credibility determination.

    Therefore, as the record reveals that the state courts
relied on the <u>Strickland</u> standard in evaluating Petitioner's
ineffective counsel claims, Petitioner has not shown, as required
by 28 U.S.C. § 2254(d), that the actions of the trial court
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  _Miller-El v. Cockrell_, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## CONCLUSION

For the reasons set forth above, the petition will be denied.  An appropriate order follows.

_s/Peter G. Sheridan_
PETER G. SHERIDAN
United States District Judge

Dated:  February 22, 2011

43